Case 4:20-cr-00297   Document 46   Filed on 06/25/24 in TXSD   Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
June 25, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL NUMBER H-20-297 |
| | § | |
| JOSUE ALVAREZ, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Josue Alvarez ("Defendant") is charged with possession of a firearm by an illegal alien.[1]  Pending before the court is Defendant's Motion to Dismiss (Docket Entry No. 42).  Defendant argues that the prohibition on illegal aliens possessing guns facially violates the Second Amendment and exceeds Congress's power under the Commerce Clause.[2]  Because the Second Amendment does not apply to at least some illegal aliens and because the statute is a valid exercise of Congress's power under the Commerce Clause, the

---

[1]Indictment, Docket Entry No. 1, p. 1.  For purposes of identification all page numbers reference the pagination imprinted at the top of the page by the court's Electronic Case Filing system.  The court refers to the United States of America as "the Government."

[2]Motion to Dismiss, Docket Entry No. 42, p. 4 ("Section 922(g)(5)(A) Facially Violates the Second Amendment under Bruen"), p. 20 ("Mr. Alvarez also asks the court to dismiss this indictment because Section 922(g)(1) [sic] is an unconstitutional extension of Congress's authority under the Commerce Clause.").

Motion to Dismiss will be denied.

## I. Indictment

A grand jury indicted Defendant on one count of possession of a firearm by an illegal alien in violation of 18 U.S.C. §§ 922(g)(5)(A) and 924(a)(2). Section 922(g)(5)(A) states that "[i]t shall be unlawful for any person . . . who, being an alien[,] is illegally or unlawfully in the United States . . . to . . . possess in or affecting commerce, any firearm[.]" When Defendant committed the alleged conduct on December 15, 2019, § 924(a)(2) stated that violations of § 922(g) were punishable by a fine, imprisonment not more than 10 years, or both. 18 U.S.C.A. § 924(a)(2) (2015).[3]

Defendant filed his pending Motion to Dismiss on May 17, 2024, and the Government responded.[4] Defendant has not filed a reply. Defendant argues that the Second Amendment applies to illegal aliens and that disarming illegal aliens is inconsistent with the country's historical tradition of firearms regulation.[5] The

---

[3]The statute was amended in 2022 to authorize imprisonment up to 15 years for violations of § 922(g). Bipartisan Safer Communities Act, Pub. L. No. 117-159, 136 Stat 1313, 1329 (2022) (codified at 18 U.S.C. § 924(a)(8)).

[4]Motion to Dismiss, Docket Entry No. 42; United States' Opposition to Defendant's Motion to Dismiss ("Government's Response"), Docket Entry No. 44.

[5]Motion to Dimsiss, Docket Entry No. 42, p. 9 ("The historical record shows that unlawfully present aliens were not a group that was historically stripped of their Second Amendment rights, and there is no historical tradition, particularly from the founding
(continued...)

Government argues that the Second Amendment only applies to U.S. citizens and that the prohibition is consistent with the historical record.[6] Defendant separately argues that § 922(g)(5)(A) exceeds Congress's power under the Commerce Clause.[7] Defendant acknowledges that the Fifth Circuit has rejected this argument but raises the argument to preserve the record for further review.[8]

## II.  Legal Standard

### A.  Federal Rule of Criminal Procedure 12(b)(1)

Rule 12(b)(1) allows a defendant to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). A court may consider a motion to dismiss an indictment if the defect "in the prosecution is essentially one of law." United States v.

---

[5](...continued)
era, of disarmament based on that status.").

[6]Government's Response, Docket Entry No. 44, p. 5 ("The historical understanding of the Second Amendment, which did not extend the right to bear arms to those outside of the political community, is consistent with this understanding of 'the people' as limited to citizens. . . . [T]o the extent the Court goes on to analyze whether the Second Amendment permits the restriction in Section 922(g)(5)(A), that restriction is consistent with and similar to relevant historical practice around firearms regulation.").

[7]Motion to Dismiss, Docket Entry No. 42, pp. 20-22.

[8]Id. at 22. See United States v. Alcantar, 733 F.3d 143, 146 (5th Cir. 2013) (holding that a Commerce Clause challenge to § 922(g)(1) was foreclosed by Fifth Circuit precedent).

Guthrie, 720 F. App'x 199, 201 (5th Cir. 2018) (per curiam). A defendant may therefore use a Rule 12(b)(1) motion to challenge the constitutionality of the charged statutes. United States v. Valencia, No. 517-cr-882-DAE(1)(2), 2018 WL 6182755, at *2 (W.D. Tex. Nov. 27, 2018).

**B.   The Second Amendment and Bruen**

The Second Amendment states that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In District of Columbia v. Heller, 128 S. Ct. 2783, 2822 (2008), the Court held that the Second Amendment protects the right to possess a handgun in the home for self-defense. In McDonald v. City of Chicago, 130 S. Ct. 3020, 3025 (2010), the Court held that the Second Amendment applies to the states through the Fourteenth Amendment. In New York Rifle & Pistol Association, Inc. v. Bruen, 142 S. Ct. 2111, 2122 (2022), the Court held that the Second Amendment protects possession of a handgun outside the home for self-defense.

Bruen substantially clarified the standard to apply to the regulation of Second Amendment conduct. A court starts by asking whether the "Second Amendment's plain text covers [the] individual's conduct[.]" Id. at 2126. If it does, the conduct is presumptively protected. Id. at 2129-30. To justify a regulation of protected conduct, the Government must "demonstrat[e] that it is

consistent with the Nation's historical tradition of firearm regulation." Id. at 2130.  In United States v. Rahimi, No. 22-915, 602 U.S. __ slip op. at 3, 6 (U.S. June 21, 2024), the Court applied Bruen in rejecting a facial challenge to 18 U.S.C. § 922(g)(8), which prohibits firearm possession by persons subject to certain domestic violence restraining orders.  Because the defendant brought a facial challenge the Court emphasized that "to prevail, the Government need only demonstrate that [the challenged law] is constitutional in some of its applications." Id. at 6.

### III.  Analysis

In United States v. Portillo-Munoz, decided before Bruen, the Fifth Circuit held that § 922(g)(5)(A) does not violate the Second Amendment.  643 F.3d 437, 442 (5th Cir. 2011), as revised (June 29, 2011).  The parties disagree whether Portillo-Munoz is still controlling or persuasive after Bruen.

Prior to Bruen, "the Courts of Appeals [] coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny." Bruen, 142 S. Ct. at 2125.  At the first step, "the government [could] justify its regulation by 'establishing that the challenged law regulates activity falling outside the scope of the right as originally understood.'" Id. at 2126.  "But if the historical evidence at this step [was] 'inconclusive or suggests that the regulated activity is not categorically unprotected,'" the courts would proceed to step two, means-end scrutiny. Id. (emphasis omitted).

Bruen rejected means-end scrutiny, stating that "[d]espite the popularity of this two-step approach, it is one step too many. Step one of the predominant framework is broadly consistent with Heller, which demands a test rooted in the Second Amendment's text, as informed by history." Id. at 2127.

The Government argues that because Portillo-Munoz upheld § 922(g)(5)(A) without relying on means-end scrutiny, it is not displaced by Bruen.[9] Portillo-Munoz upheld § 922(g)(5) by concluding that illegal aliens were not included in "the people" referenced in the Second Amendment. 643 F.3d at 442. The court relied on Heller's definition of "the people":

> "The people" seems to have been a term of art employed in select parts of the Constitution . . . Its uses suggest that "the people" protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community.

128 S. Ct. at 2791 (quoting United States v. Verdugo-Urquidez, 110 S.Ct. 1056, 1060-61 (1990)) (emphasis added). Moreover Portillo-Munoz made no reference to traditional means-end considerations such as the weight of the Government's interest, the severity of

---

[9] Government's Response, Docket Entry No. 44, p. 13 ("Although the Supreme Court struck down the application of means-end scrutiny, it blessed the first step in this inquiry as 'broadly consistent with Heller.' . . . Accordingly the Court can look to the holdings of the Fourth, Fifth, Eighth, and Eleventh Circuits, to conclude that Alvarez's challenge necessarily fails because undocumented immigrants are not among 'the people' protected by the Second Amendment.").

the restriction, or the fit between the restriction and the Government's interest.

Defendant argues that Portillo-Munoz is no longer good law, citing United States v. Rahimi, 61 F.4th 443 (5th Cir. 2023). In Rahimi, the Fifth Circuit held that the Second Amendment was violated by § 922(g)(8), which prohibits persons subject to certain civil restraining orders from possessing guns. Id. at 461.[10] Before doing so, the Fifth Circuit held that Bruen displaced its prior precedents upholding § 922(g)(8), United States v. Emerson, 270 F.3d 203, 261 (5th Cir. 2001) and United States v. McGinnis, 956 F.3d 747, 755 (5th Cir. 2020). But in so holding, the Fifth Circuit emphasized that Emerson and McGinnis relied on means-end scrutiny. Id. at 450.

Because Portillo-Munoz upheld § 922(g)(5)(A) based on the Second Amendment's text and the founding-era meaning of "the people" without relying on means-end scrutiny, it is likely still controlling after Bruen. But whether or not Portillo-Munoz is controlling, the opinion's reasoning is persuasive. At the very least some illegal aliens have not "developed sufficient connection with this country to be considered part of th[e national] community" and are therefore not included in the class of "the people" protected by the Second Amendment. See Heller, 128 S. Ct. at 2791. For Defendant's facial challenge to succeed, every illegal alien would have to be part of "the people[.]" U.S. Const.

---

[10]This holding was overturned. Rahimi, No. 22-915, 602 U.S. __, slip op. at 3.

amend. II; see Rahimi, No. 22-915, 602 U.S. __, slip op. at 6. Defendant's facial challenge to § 922(g)(5)(A) therefore fails.

### IV.  Conclusion and Order

Whether or not Portillo-Munoz is controlling, Defendant's facial challenge to 18 U.S.C. § 922(g)(5)(A) fails because at least some illegal aliens are not protected by the Second Amendment. Moreover Defendant acknowledges that Fifth Circuit precedent forecloses Defendant's Commerce Clause challenge.  Defendant's Motion to Dismiss (Docket Entry No. 42) is therefore **DENIED**.

This case is set for jury selection and trial on August 12, 2024, at 1:00 p.m.  By August 5, 2024, counsel for each party will file motions in limine, exhibit lists, copies of all exhibits, witness lists, and a proposed jury charge.  The court will hold a final pretrial conference on August 8, 2024, at 11:30 a.m. in Courtroom 9B.  Defendant Josue Alvarez is **ORDERED** to appear at the conference.

**SIGNED** at Houston, Texas, on this 25th day of June, 2024.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE